SARAH RUSS, Appellant, v. MADELINE RUSS, Interpleaded and Substituted in Place and Stead of NEW YORK LIFE INSURANCE COMPANY, Respondent.— Judg-

ment affirmed, with costs. In our opinion the testimony of Doctor Houck was incompetent in its entirety. In so far as Doctors Bromberg and Feigin testified regarding their examination of the assured at Bellevue Hospital, such examination having arisen by operation of law, it may be that their testimony to that extent was not objectionable, but we think that Doctor Feigin's opinion as to the length of time that the malady or alleged incompetency of the assured had existed was incompetent. Even considering all of the medical testimony as properly in the case, we are of opinion that a question of fact was presented and that the conclusion reached by the trial court finds support in the record. We are further of opinion that the testimony of Attorney Hyman was not privileged in view of the character of the testimony given by him and the presence of the defendant at the time of the conversation between the attorney and the deceased. (*Baumann* v. *Steingester*, 213 N. Y. 328, 332.) Kapper, Hagarty and Davis, JJ., concur; Tompkins, J., with whom Young, J., concurs, dissents and votes for reversal, with the following memorandum: The findings of the trial court are against the weight of evidence and contrary to undisputed facts. The defendant went to live with plaintiff's son in August, 1929. They were married March 12, 1931. The instruments making her beneficiary of two policies in place of the plaintiff, dated March 13, 1931, were delivered to the insurance company March 18, 1931. Three days later defendant petitioned that her husband be adjudicated insane and committed to a State institution, and in the petition stated that he had been sick for two years and had shown " lack of memory. Then he got quiet and wouldn't talk. He was mixed up in his speech and would go over the same questions many times. He got nasty, and spoke about being a big business man. He went to a policeman and said he was a big surgeon." (Plaintiff's Exhibit 14.) On March 25, 1931, decedent was committed to the Central Islip Hospital as an insane person. He died one month later of general paresis caused by syphilis. The insurance company's doctor found decedent insane in September, 1930. The alienist in charge of the Psychiatric Service at Kings County Hospital found decedent " hopelessly and irretrievably insane " on March 24, 1931. Other alienists testified that decedent was insane both before and after March thirteenth, the date of the change in beneficiaries. The proofs of death signed by defendant state that decedent was totally disabled from August 14, 1929. The affidavit of Doctor Barnhardt, decedent's attending physician, attached to the plaintiff's proofs of death, states that death was caused by " general paralysis of the insane," from which he had suffered for more than one year. (Plaintiff's Exhibit 6.) It is conceded that decedent was insane on March 18th, but respondent undertakes to account for that condition by occurrences on the 16th and 17th of March, 1931. I think this claim is absurd. General paresis is a steadily progressive mental disease and did not suddenly develop in this case, and in the last stages of the disease there are no lucid intervals. In my opinion, decedent was insane and incompetent to transact business or to know what he was doing on the 13th of March, 1931, and the contrary findings of fact by the Special Term are inconsistent with the undisputed facts and the overwhelming weight of the testimony.